UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VANESSA PEAKE,

      Plaintiff,

v

MARADA INDUSTRIES, INC, d/
b/a COSMA BODY ASSEMBLY
MICHIGAN,

      Defendant.

Civil Action No.:
Honorable

_____

JAMES B. RASOR  (P 43476)
ANDREW J. LAURILA  (P 78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax
_____

## COMPLAINT & JURY DEMAND

NOW COMES PLAINTIFF, VANESSA PEAKE, by and through her attorneys, Rasor Law Firm, PLLC, and for her Complaint against Defendant Cosma Body Assembly Michigan states as follows:

## GENERAL ALLEGATIONS

### Parties

1.    At all relevant times, Plaintiff Vanessa Peake ("Peake"), was a resident of the City of Detroit, County of Wayne, State of Michigan.

2.     Defendant Marada Industries, Inc. d/b/a Cosma Body Assembly (hereinafter "Cosma"), is a domestic profit corporation. Cosma operates a facility and conducts business at issue here in the City of New Hudson, County of Oakland, State of Michigan.

3.     At all material times, Plaintiff was an employee of Defendant.

4.     This lawsuit arises out of events occurring within the City of New Hudson, County of Oakland, and State of Michigan.

**Jurisdiction and Venue**

5.     This cause of action involves violations of Plaintiff's civil rights, as secured by the United States and Michigan Constitutions, and is brought pursuant to the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act ("Title VII"), the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), the Michigan Workers Disability Compensation Act ("WDCA"), and the Elliott-Larsen Civil Rights Act ("ELCRA").

6.     This Court has jurisdiction over the claims arising under federal law pursuant to 28 U.S.C. §§ 1331, 1343. This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

7.     Defendant Cosma is a covered entity, which includes "employer[s]" within the meaning of the ADA and Title VII and an "employer" within the meaning of the PWDCRA, MCL §37.1201(b), the ELCRA, M.C.L. § 37.2201(a), and the WDCA, MCL §418.111 & §418.115.

8.      The amount in controversy exceeds $75,000.00 exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

9.      Venue is appropriate in this Court pursuant to 28 USC §1391(b), as this cause of action arises out of occurrences that took place within this District in the County of Oakland and Defendant transacts and conducts business within this District.

<u>**Administrative Procedures**</u>

10.     Plaintiff filed a charge with the EEOC based on race, disability and retaliation on January 29, 2018.

11.     The EEOC gave Plaintiff a Right to Sue letter on August 27, 2019.

12.     Plaintiff has satisfied all jurisdictional requirements set forth by the EEOC for bringing federal causes of action as addressed below.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

13.     Plaintiff was hired by Defendant Cosma as the Health, Safety, Ergonomics & Environmental Coordinator on April 11, 2016.

14.     Of Defendant's salaried employees, Plaintiff was one of the only African American individuals in this role.

15.     Beginning in 2017, Plaintiff began noticing various disparate treatment towards African American employees, specifically but not limited to herself and other manufacturing employees.

16.     Some examples of this treatment included using degrading terms towards African American employees like, "dogs" or "stupid," failing to let African American employees have the same access and privileges to areas of the facility, giving worse assignments and precluding training to ensure African American employees did not receive lateral internal promotions, and not permitting African American employees to apply internally for open positions.

17.     There were a few instances of the use of the "n" word by White employees and these were not properly investigated or reported based on Defendant's policies.

18.     Along with Plaintiff, four other African American employees filed EEOC charges based on race discrimination from Defendant at this specific location.

19.     On or around August 9, 2017, an incident occurred at the facility that caused Plaintiff to suffer emotional trauma.

20.     Subsequently and due to this incident, Plaintiff took a medical leave of absence from August 22, 2017 to September 26, 2017.

21.     During this time, Plaintiff's psychiatrist diagnosed her with Post Traumatic Stress Disorder ("PTSD") arising from and relating to the work incident.

22.     On or around September 13, 2017, Plaintiff received a correspondence from Defendant's parent company expressly stating that her psychological injury related to her employment and thus could not be covered by short-term disability leave, but had to fall under worker's compensation.

23.     The above correspondence and Plaintiff's alleged need for worker's compensation leave was relayed to Defendant's Human Resource Department.

24.     Plaintiff's doctor sent Defendant a correspondence on or around September 26, 2017, requesting an accommodation of occasional breaks if Plaintiff became "overwhelmed" and could not "manage her emotions and feelings."

25.     Although Plaintiff returned to work on September 26, 2017, her doctor's note was disregarded by Defendant and the racial hostility she had felt before persisted.

26.     Because of the continuous disparate treatment she experienced, Plaintiff called Defendant's corporate reporting hot line on or around October 15, 2017 to further report race-based discrimination.

27.     Per Defendant's policies, when a complaint of discrimination is made via the corporate hotline, that will be conveyed to Defendant's facility and an investigation should be conducted.

28.     Along with calling the corporate discrimination hotline, Plaintiff also repeatedly made verbal complaints of discrimination to Alison Churchill, an executive administrative assistant to various members of the management team.

29.     Per her employment agreement, Plaintiff enrolled in a Flex Spending Account ("FSA"), which was an employment benefit that permitted employees to have money deducted to pay for healthcare out-of-pocket costs.

30.     In October of 2017, despite having enrolled in this FSA, Plaintiff was denied reimbursement for various expenses that would have and should have been covered.

31.     Despite Plaintiff's ongoing accommodation request, uninvestigated racial discrimination complaint(s) and pending worker's compensation claim, Plaintiff was terminated on November 17, 2017.

32.     Plaintiff was not provided any explanation for this termination.

33.     However, in 2016 Plaintiff had received glowing performance reviews and received a yearly bonus for her performance.

34.     Likewise, prior to her termination Defendant had successfully passed an inspection by MIOSHA without a single violation found.

35.     Upon information and belief, before Plaintiff was unlawfully terminated, another African American employee who had made race-based complaints was terminated.

36.     After Plaintiff's termination, she was replaced by a Caucasian employee.

## COUNT I
## VIOLATION OF 42 U.S.C § 12101, *et seq.*, OF THE AMERICANS WITH DISABILITIES ACT—DISCRIMINATION AND/OR FAILURE TO ACCOMMODATE

37.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 36, as if fully set forth herein.

38.     Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112, prohibits discrimination against any qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

39.     42 U.S.C. § 12111(8) defines qualified individual to mean an individual who with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires.

40.     At all relevant times, Plaintiff was a qualified individual within the meaning of 42 U.S.C. § 12111(8).

41.     Plaintiff could perform her job duties with, or without, a reasonable accommodation.

42.     Plaintiff's PTSD was or was regarded as limiting, the substantial major life activities of learning, reading, thinking, communicating, and working.

43.    42 U.S.C. § 12112(b) defines discrimination against a qualified individual on the basis of disability. The definition of discrimination includes the failure to reasonably accommodate a disabled individual. It includes the following:

     a.    42 U.S.C. § 12112(b)(3) includes in the definition of discrimination utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability.

     b.    42 U.S.C. § 12112(b)(5) includes in the definition of discrimination the failure to reasonably accommodate a qualified individual with a disability.

     c.    42 U.S.C. § 12112(b)(6) includes in the definition of discrimination the use of qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with a disability unless it is shown to be job related for the position in question and consistent with business necessity.

44.    The ADA also requires an individualized inquiry into each individual's specific situation and need for an accommodation and accommodating such a request unless the request poses an undue hardship.

45.    Defendant violated the ADA when it discriminated against Plaintiff based on her disability and request for accommodation by failing to accommodate her reasonable requests for an accommodation and patently disregarding Plaintiff's medical condition and/or needs.

46.    Defendant discriminated against Plaintiff by enforcing its policies regarding requested accommodations and denying Plaintiff an accommodation lacking either a sufficient reason or engaging in any interactive process.

47.    By ignoring ongoing discrimination and enforcing discriminatory policies against Plaintiff, Defendant disregarded Plaintiff's basic rights under the Americans with Disabilities Act.

48.    Defendant's actions and policies in discriminating against Plaintiff based on her disability and failing to accommodate Plaintiff were conducted with malice or reckless indifference to Plaintiff's federally protected rights.

49.    As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

50.    Pursuant to the ADA, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff Vanessa Peake respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, for but not limited to compensatory damages in whatever amount she is found to be entitled, exemplary damages commensurate with the wrong and Defendant's ability to pay,

and an award of her fair and reasonable attorney fees, cost of litigation, and interest.

## COUNT II
## VIOLATION OF 42 USC § 12101, *et seq.* - THE AMERICANS WITH DISABILITIES ACT – RETALIATION

51.     Plaintiff reasserts and realleges each and every allegation contained in paragraphs 1 through 50 of this Complaint, as if fully set forth herein, paragraph by paragraph, word for word.

52.     The ADA, pursuant to 42 USC §12203, prohibits retaliation against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

53.     Defendant owed Plaintiff a duty not to retaliate against her with respect to employment, promotional opportunities, compensation, post-termination rights or other conditions or privileges of employment on the basis of her protected activities.

54.     Plaintiff engaged in protected activity when she requested an accommodation with Defendant.

55.     Defendant had knowledge of Plaintiff's protected activities as set forth in the preceding paragraphs.

56.    Had Plaintiff not sought her request for an accommodation, she would not have been subjected to adverse treatment from Defendant.

57.    Defendant's actions in retaliating against Plaintiff based on her protected activity were conducted with malice or reckless indifference to Plaintiff's federally protected rights.

58.    Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

59.    Plaintiff was terminated shortly after she engaged in the above-referenced protected activities.

60.    Defendant, by and through its agents, servants, and/or employees, subsequently took adverse, retaliatory actions against Plaintiff including, but not limited to, denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees of Defendant along with terminating her employment.

61.    Defendant and its agents, servants and/or employees' actions were intentional with reckless indifference to Plaintiff's rights and sensibilities.

62.    As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

63.     Pursuant to the ADA, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff Vanessa Peake respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, including but not limited to compensatory damages in whatever amount she is found to be entitled, exemplary damages commensurate with the wrong and Defendant's ability to pay, and an award of his fair and reasonable attorney fees, cost of litigation, and interest.

### COUNT III
### VIOLATION OF M.C.L. § 37.1101, *et seq.*, THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT — DISCRIMINATION AND FAILURE TO ACCOMMODATE

64.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 63, as if fully set forth herein.

65.     The Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101 *et seq.*, ("PWDCRA") prohibits the discharge or otherwise discrimination against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

66.    The PWDCRA also requires an employer to "accommodate a person with a disability for purposes of employment … unless the person demonstrates that the accommodation would impose an undue hardship." M.C.L. § 37.1102.

67.    A disability is "[a] determinable physical or mental characteristic of an individual which may result from disease, injury, congenital conditions of birth, or functional disorder, if the characteristic ... substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion." M.C.L. § 37.1103(d)(i)(A).

68.    At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the PWDCRA.  Specifically, Plaintiff has a physical impairment that substantially limits one or more of her major life activities, has a record of the impairment, and/or Defendant regarded Plaintiff as having such an impairment.

69.    Plaintiff's PTSD was or was regarded as limiting, the substantial major life activities of learning, reading, thinking, communicating, and working.

70.    Plaintiff is qualified for the position she held and could perform the essential job duties of her position with or without a reasonable accommodation.

71.    Plaintiff requested a reasonable accommodation and was denied that request and/or said was disregarded by Defendant.

72.     Defendant violated the PWDCRA when it discriminated against Plaintiff on the basis of her disability by failing to accommodate her reasonable requests for an accommodation.

73.     Defendant treated Plaintiff, because of her disability, more harshly than it treated other similarly-situated employees and upon information and belief, this was at least in part based on discriminatory misconceptions of Plaintiff's disability.

74.     Defendant's actions were intentional and in disregard of Plaintiff's rights and sensibilities.

75.     Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

76.     Defendant did not engage in any interactive process to attempt to accommodate Plaintiff, but instead disregarded Plaintiff's doctor's note/request for an accommodation.

77.     Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the PWDCRA.

78.     As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of

employee benefits, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

79.     Pursuant to the PWDCRA, Defendants are liable to Plaintiff for all damages allowed under state law.  To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $25,000.00, plus costs, interest, and attorney fees so wrongfully incurred, as the Court deems just.

## COUNT IV – DISPARATE TREATMENT
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000E-2 – RACE DISCRIMINATION

80.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 79, as if fully set forth herein.

81.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. prohibits discrimination against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race.

82.     At all material times, Plaintiff has been an employee of Defendant, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

83.    Plaintiff is African-American, in the minority at Defendant, specifically within Defendant's salaried employees, and she is a member of a protected class under Title VII of the Civil Rights Act of 1964.

84.    As an employer within the meaning of the Title VII of the Civil Rights Act of 1964, Defendant owed Plaintiff a duty not to discriminate against her with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of her race.

85.    Because of her race, Plaintiff was subjected to treatment during her time with Defendant that was disparate from that accorded to non-minority co-workers of Defendant and at the location of Plaintiff's employment, who were treated more favorably than she was.

86.    Various other African American employees suffered discriminatory conduct from the same management team around this same time, which led to multiple EEOC charges and other discriminatory/retaliatory termination(s).

87.    The disparate and less favorable treatment to which Plaintiff was subjected during her employment with Defendant has included adverse employment actions on the basis of Plaintiff's race, or Plaintiff has otherwise been discriminated against with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of her race.

88.    The disparate and less favorable treatment to which Plaintiff was subjected during Plaintiff's employment with Defendant came both from management and supervisory personnel, and from Plaintiff's non-minority co-workers.

89.    Defendant has a policy or pattern of practice that encourages management or supervisory personnel to directly discriminate against African American employees, or that tolerates the disparate and less favorable treatment of African American employees by said management and supervisory personnel.

90.    Defendant has a policy or pattern of practice that encourages management or supervisory personnel to look the other-way or actively encourage disparate and less favorable treatment of African American employees by non-African American employees and/or supervisory personnel.

91.    The individual employees of Defendant have either directly discriminated against Plaintiff or have tolerated and looked the other way to disparate and less favorable treatment of Plaintiff by her non-African American co-workers and/or supervisory personnel.

92.    The disparate treatment to which Plaintiff was subjected during her employment with Defendant was so substantially disparate and less favorable than the treatment of non-African American employees that it raises an inference of disparate treatment discrimination.

93.     There is no legitimate business reason justifying the disparate treatment to which Plaintiff has been subjected during her employment with Defendant.

94.     As a direct and proximate result of Defendant's unlawful actions against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

95.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant is liable to Plaintiff for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.  The conduct of Defendant was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally in an amount that is fair and reasonable and compensates Plaintiff for her injuries, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred.

**COUNT V –**
**RETALIATION TITLE VII – 42 U.S.C 2000e**

96.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 95, as if fully set forth herein.

97.     Title VII prohibits retaliation against any individual because that person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in any investigation … under this act. 42 U.S.C. § 2000e-3(a).

98.     At all material times, Plaintiff was an employee of Defendant, covered by and within the meaning of Title VII.

99.     Complaining about, reporting, and/or opposing discriminatory treatment is a statutorily protected activity.

100.    As an employer within the meaning of Title VII, Defendant owed Plaintiff a duty not to retaliate against her with respect to employment, promotional opportunities, post-termination rights, compensation or other conditions or privileges of employment on the basis of her engaging in statutorily protected activities.

101.    Plaintiff engaged in conduct protected under Title VII, including, but not limited to, complaining of, reporting, and/or opposing the discriminatory conduct of the agents, servants, and/or employees of Defendant.

102.    Defendant had knowledge of Plaintiff's protected activities.

103.    Defendant, by and through its agents, servants, and/or employees, subsequently took adverse, retaliatory action against Plaintiff including, but not

limited to, terminating Plaintiff, denying Plaintiff various employment benefits and denying her other conditions, terms, opportunities, and privileges provided to other, non-engaging in protected activity employees of Defendant.

104.   Defendant and its agents, servants and/or employees' actions were intentional and willful with reckless indifference to Plaintiff's rights and sensibilities.

105.   By failing to take prompt and effective remedial actions following Plaintiff's complaint, Defendant has in effect condoned, ratified, and/or authorized retaliation against Plaintiff and individuals similarly situated.

106.   Other employees similarly-situated to Plaintiff who complained of race discrimination were likewise either terminated or suffered other material adverse action(s) as a result of this conduct.

107.   As a direct and proximate result of Defendant's unlawful actions and retaliation against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

108.   Pursuant to Title VII, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish

or deter the Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant including but not limited to actual damages in whatever amount she is found to be entitled to and punitive and/or exemplary damages under Title VII, and any other damages permitted under Title VII, and an award of her fair and reasonable attorney fees, cost of litigation, and interest.

**COUNT VI– RACE DISCRIMINATION**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT,**
**M.C.L. § 37.2101 _et seq._**

109.   Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 108, as if fully set forth herein.

110.   The Elliott-Larsen Civil Rights Act prohibits discrimination against any individual with respect to employment, compensation, or a term, condition, or privilege of employment because of race. M.C.L. § 37.2202(a).

111.   At all times material and relevant, Plaintiff was an employee and Defendant was Plaintiff's employer, covered by and within the meaning of the Elliot Larsen Civil Rights Act, M.C.L. § 37.2101 _et seq_.

112.   Plaintiff is African American, putting her in the minority at Defendant, and is thus member of a protected class under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 _et seq_.

113.   As an employer within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, Defendant owed Plaintiff a duty not to discriminate against her with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of her race.

114.   Because of her race, Plaintiff was continuously subjected to treatment during her employment with Defendant that was disparate from that accorded to non-African American co-workers, who have been treated more favorably than her.

115.   The disparate and less favorable treatment to which Plaintiff was subjected during her employment included adverse employment actions on the basis of Plaintiff's race, or Plaintiff has otherwise been discriminated against with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of her race.

116.   The disparate and less favorable treatment to which Plaintiff was subjected during her employment came both from management and supervisory personnel.

117.   Defendant has a policy or pattern of practice that encourages management or supervisory personnel to directly discriminate against African American employees or that tolerates the disparate and less favorable treatment of the same by said management and supervisory personnel.

118.   Defendant has a policy or pattern of practice that encourages management or supervisory personnel to look the other-way or actively encourage disparate and less favorable treatment of African American employees by non-African American employees and/or supervisory personnel.

119.   The disparate treatment to which Plaintiff was subjected during her employment with Defendant was so substantially disparate and less favorable than the treatment of non-protected, dissimilar employees that it raises an inference of disparate treatment discrimination.

120.   The disparate treatment to which Plaintiff was subjected to during her time at Defendant was so substantially disparate and less favorable than the treatment received by her non-protected co-workers that it unreasonably interfered with Plaintiff's work performance.

121.   There is no legitimate business reason justifying the disparate treatment to which Plaintiff was subjected to.

122.   As a direct and proximate result of Defendant's unlawful actions against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

123.   Pursuant to the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*., Defendant is liable to Plaintiff for all damages allowed under state law.  To

the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant in an amount in excess of $25,000.00, together with costs, interest, and attorney fees so wrongfully incurred, as the Court deems just.

## COUNT VII – RETALIATION VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et seq.*

124.   Plaintiff hereby restate and re-allege the allegations contained in paragraphs 1 through 123 above, as though fully set forth herein.

125.   The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* prohibits retaliation against any individual because that person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in any investigation … under this act.

126.   At all material times, Plaintiff is and has been an employee of Defendant covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

127.   As an employer within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, Defendant owed Plaintiff a duty not to retaliate

against Plaintiff with respect to her employment, promotional opportunities, compensation, post-termination rights, or other conditions or privileges of employment on the basis of reporting harassment and discrimination.

128.   Complaining about, reporting, and/or opposing racially discriminatory harassment and treatment, or racially discriminatory policies or patterns of practice is a statutorily protected activity under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

129.   Plaintiff engaged in conduct protected under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*., including, but not limited to, complaining of, reporting, and/or opposing the discriminatory and harassing conduct of the agents, servants, and/or employees of Defendant.

130.   Defendant had knowledge of Plaintiff's complaints and protected activities as set forth in the preceding paragraphs.

131.   Defendant by and through its agents, servants, and/or employees, subsequently took adverse, retaliatory action against Plaintiff including, but not limited to, terminating Plaintiff for a pretextual reason and denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees of Defendant.

132.   Plaintiff was subjected to continual harassment and other retaliatory acts by Defendant and its agents, servants and/or employees in retaliation for her opposition to civil rights violations and having complained about the

discriminatory conduct described herein in violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

133.   Defendant and its agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

134.   As a direct and proximate result of Defendant's unlawful actions and retaliations against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendant in an amount in excess of $25,000.00, together with interest, costs, and reasonable attorney fees, and grant further such relief as this Court deems fair and just under the circumstances.

<u>**COUNT VIII**</u>
<u>**VIOLATION OF MCL §418.301, *et seq*. — WORKERS' DISABILITY COMPENSATION ACT — RETALIATION**</u>

135.   Plaintiff reasserts and realleges each and every allegation contained in paragraphs one through 134 of this Complaint, as if fully set forth herein, paragraph by paragraph, word for word.

136.   The WDCA, MCL §418.301(13), prohibits retaliation against any employee "because the employee filed a complaint or instituted or caused to be

instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself."

137.   Defendant owed Plaintiff a duty not to retaliate against her with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment based on her protected worker's compensation activity.

138.   Plaintiff engaged in protected activity when she reported an injury that was subsequently determined to be work-related and sought treatment regarding that workplace injury, and when an inquiry occurred about filing for workers compensation benefits when her accommodation request was denied.

139.   Defendant had knowledge of Plaintiff's protected activities as set forth in the preceding paragraphs.

140.   Shortly after Defendant became aware that Plaintiff's PTSD and related medical issues posed worker's compensation claims, Plaintiff was terminated.

141.   Given this termination, Plaintiff was never provided any opportunity to seek worker's compensation benefits.

142.   Had Plaintiff's medical condition not given rise to potential worker's compensation coverage and/or seeking treatment pursuant to a workplace injury, she would not have been subjected to adverse treatment from Defendant.

143.   Plaintiff had a spotless employment record before any of this occurred regarding her worker's compensation protected activity.

144.   Defendant retaliatorily disregarded its internal policies when it terminated Plaintiff despite her attempts to return to work and/or provide Defendant with necessary documentation regarding her need for an accommodation.

145.   Defendant's actions in retaliating against Plaintiff based on her protected activity were conducted with malice or reckless indifference to Plaintiff's statutorily protected rights.

146.   Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees

147.   Defendant, by and through its agents, servants, and/or employees, subsequently took adverse, retaliatory actions against Plaintiff including, but not limited to, denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees of Defendant along with terminating his employment.

148.   Defendant and its agents, servants and/or employees' actions were intentional with reckless indifference to Plaintiff's rights and sensibilities.

149.   As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of

employee benefits, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

150. Pursuant to the WDCA, Defendant is liable to Plaintiff for all damages allowed under state law.  To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor against Defendants in an amount that is fair and reasonable and contemplates Plaintiff for her injuries plus costs, interest, and attorney fees so wrongfully incurred, as the Court deems just.

THE RASOR LAW FIRM, PLLC

*/s/ Andrew J. Laurila*
ANDREW J. LAURILA (P78880)
Attorney for Plaintiff
201 E. 4th Street
Royal Oak, MI 48067

Dated: November 25, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VANESSA PEAKE,

      Plaintiff,                       Civil Action No.:
                                          Honorable

v

MARADA INDUSTRIES, INC.,
d/b/a/ COSMA BODY ASSEMBLY
MICHIGAN,

      Defendant.

_____

JAMES B. RASOR  (P43476)
ANDREW J. LAURILA (P78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax

_____

**<u>RELIANCE ON JURY DEMAND</u>**

      NOW COMES Plaintiff, VANESSA PEAKE, by and through her attorneys, Rasor Law

Firm, PLLC, by ANDREW J. LAURILA, and hereby respectfully relies upon the jury demand

previously filed in the within cause of action.

                        THE RASOR LAW FIRM, PLLC

                        */s/ Andrew J. Laurila*
                        ANDREW J. LAURILA (P78880)
                        Attorney for Plaintiff
                        201 E. 4th Street
                        Royal Oak, MI 48067

Dated: November 25, 2019