UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VANESSA PEAKE,

  Plaintiff,


v.         CASE NO.  2:19-CV-13476


MARADA INDUSTRIES, INC., d/b/a HON. BERNARD A. FRIEDMAN
COSMA BODY ASSEMBLY
MICHIGAN,      MAG. DAVID R. GRAND

   Defendant.

---

| | |
|---|---|
| James B. Rasor (P43476) | Timothy H. Howlett (P24030) |
| Andrew J. Laurila (P78880) | DICKINSON WRIGHT PLLC |
| RASOR LAW FIRM, PLLC | *Attorneys for Defendant* |
| *Attorneys for Plaintiff* | 500 Woodward Avenue, Suite 4000 |
| 201 E. Fourth Street | Detroit, Michigan  48226 |
| Royal Oak, MI  48067 | (313) 223-3500 |
| (248) 543-9000 | thowlett@dickinsonwright.com |
| jbr@rasorlawfirm.com | |
| ajl@rasorlawfirm.com | |

---

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

  Defendant Marada Industries, Inc. d/b/a Cosma Body Assembly Michigan

("Cosma Body" or "Defendant"), through its undersigned counsel, moves for

Summary Judgment of Plaintiff Vanessa Peake's ("Plaintiff") claims pursuant to

Federal Rule of Civil Procedure 56.

Plaintiff cannot establish a genuine dispute of material fact as to her claims, and, as such, Cosma Body is entitled to Summary Judgment in its favor. In support of its Motion, Cosma Body relies upon the attached Brief in Support of Defendant's Motion for Summary Judgment and upon the pleadings on file with this Court.

Counsel for Cosma Body sought concurrence in the relief requested from Plaintiff's counsel on March 25, 2021; Plaintiff's counsel denied concurrence that same day.

WHEREFORE, Defendant respectfully requests that the Court grant its Motion for Summary Judgment in its entirety and enter judgment in its favor.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: _/s/ Timothy H. Howlett_
Timothy H. Howlett (P24030)
Attorneys for Defendant
500 Woodward Avenue, Ste. 4000
Detroit, MI  48226
(313) 223-3500
thowlett@dickinsonwright.com

Date:  March 29, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VANESSA PEAKE,

     Plaintiff,

v.

CASE NO.  2:19-CV-13476

MARADA INDUSTRIES, INC., d/b/a
COSMA BODY ASSEMBLY
MICHIGAN,

HON. BERNARD A. FRIEDMAN

MAG. DAVID R. GRAND

     Defendant.

---

James B. Rasor (P43476)
Andrew J. Laurila (P78880)
RASOR LAW FIRM, PLLC
*Attorneys for Plaintiff*
201 E. Fourth Street
Royal Oak, MI  48067
(248) 543-9000
jbr@rasorlawfirm.com
ajl@rasorlawfirm.com

Timothy H. Howlett (P24030)
DICKINSON WRIGHT PLLC
*Attorneys for Defendant*
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226
(313) 223-3500
thowlett@dickinsonwright.com

---

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

i

## I. Table of Contents

II.   INTRODUCTION ...................................................................................................... 1

III.   STATEMENT OF FACTS ....................................................................................... 2

IV.   STANDARD OF REVIEW ...................................................................................... 7

V.   LEGAL ARGUMENT ............................................................................................. 8

   A.   Collateral Estoppel Bars Plaintiff's PWDCRA, ELCRA, and WDCA Claims. .............. 8

   B.   Plaintiff's ADA Failure to Accommodate Claim Fails. ................................................ 10

   C.   Plaintiff's ADA Disability Discrimination Claim Cannot Succeed. ............................... 11

     1.   Plaintiff Cannot Establish a Prima Facie Case of Disability Discrimination. .......... 12

     2.   Plaintiff Failed to Perform Her Job Adequately. ...................................................... 13

     3.   Plaintiff Cannot Show Pretext. ................................................................................... 13

   D.   Plaintiff's ADA Retaliation Claim Cannot Succeed. .................................................... 15

   E.   Plaintiff's Title VII Race Discrimination Claim is Meritless. ...................................... 17

     1.   There is no direct evidence of race discrimination. ................................................. 19

     2.   Plaintiff cannot establish a prima facie case of race discrimination. ....................... 20

     3.   There is no evidence of pretext. ................................................................................. 21

   F.   Plaintiff's Title VII Retaliation Claim Fails. ............................................................... 22

   G.   Plaintiff Has No Viable WDCA Retaliation Claim. ..................................................... 23

VI.   CONCLUSION ...................................................................................................... 25

**Cases**

478 U.S. at 795; *Hamilton v. Niagara Frontier Transp. Auth.*, No. 00-CV-300SR, 00-CV-863SR, 2007 WL 2241794, at *8 ...............................................10

Americans with Disabilities Act of 1990...................................................17

*Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017). ..................7

*Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) ......................20

*Chavez v. Waterford Sch. Dist.*, 720 F. Supp. 2d 845, 854 (E.D. Mich. 2010).......10

*Clay v. UPS, Inc.*, 501 F.3d 695, 704 (6th Cir. 2007) ...........................................14

*Cuddington v. United Health Servs., Inc.*, 298 Mich. App. 264, 276–77 (2012)..........................................................................................24

*Deister v. AAA Auto Club of Mich.*, 91 F. Supp. 3d 905, 929–30 (E.D. Mich. 2015) ....................................................................................16

*DeLuca v. Amica Mut. Ins. Co.*, 119 F. Supp. 3d 611, 620 (E.D. Mich. 2015).........8

*E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) ............................16

*Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999)....................................23

*Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) ...........13

*Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d 811, 819 (E.D. Mich. 2011).......................8

*Haughton v. Orchard Automation*, 206 F. App'x 524, 532–533 (6th Cir. 2006) 15

*Hazle v. Ford Motor Co.*, 464 Mich. 456, 463–64 (2001) .......................................19

*Hein v. All Am. Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000)...................20

*Howard v. William Beaumont Hosp.*, No. 12-11949, 2013 WL 6730054, at *6 (E.D. Mich. Dec. 19, 2013)...................................................................23

*Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019).............21

*Jones v. Natural Essentials, Inc.*, 740 F. App'x 489, 492 (6th Cir. 2018) .............16

*Khalaf v. Ford Motor Co.*, 973 F.3d 469 (6th Cir. 2020) ........................................22

*Lewis v. City of Detroit*, No. 09-CV-14792, 2011 WL 2084067, at *2 (E.D.
  Mich. May 24, 2011) ........................................................................................8

*MacDonald-Bass v. JE Johnson Contracting, Inc.*, 493 F. App'x 718, 727 (6th
  Cir. 2012) ......................................................................................................24

*McDonald v. UAW-GM Ctr. for Human Resources*, 738 F. App'x 848, 855
  (6th Cir. 2018) ...............................................................................................16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ....................................12

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) .........14

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) .................................21

*Notarnicola v. Johnson Controls Inc.*, No. 12-11331, 2014 WL 1304591, at
  *4 (E.D. Mich. Mar. 28, 2014) ............................................................................12

*Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018) ................................20

*Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018) ...................18

*Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) ..................................15

*Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) ...................................14

*Smith*, 155 F.3d at 807 ..............................................................................................15

*Spence v. Donahoe*, 515 F. App'x 561, 567–58 (6th Cir. 2013) (quoting *Jones
  v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007)) ........................................................13

*Storey v. Meijer, Inc.*, 431 Mich. 368, 373 (1988) ....................................................9

*Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, at *3 (Table)
  (6th Cir. 2012) ...............................................................................................20

*Town v. Mich. Bell Tel. Co.*, 455 Mich. 688, 704 (1997) ........................................14

*Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) ..................................................9

*William Beaumont Hosp. v. Wass*, 315 Mich. App. 392, 399 (2016) ........................9

**Federal Statutes**

42 U.S.C. § 12112(a) ...............................................................................12

42 U.S.C. § 12112(b)(5)(A ......................................................................10

42 U.S.C. § 12203(a) ...............................................................................15

42 U.S.C. § 2000e-2 ................................................................................18

42 U.S.C. § 2000e–3(a)............................................................................22

Americans With Disabilities Act, 42 U.S.C. § 12101 ...............................1

Title VII, 42 U.S.C. § 2000e ....................................................................1

**Rules**

Fed R. Civ. P. 56(c)(1)(A) ........................................................................8

Fed. R. Civ. P. 56(a)..................................................................................7

**State Statutes**

Elliott Larson Civil Rights Act, MCL 37.2101 .........................................1

MCL 37.1202 ...........................................................................................10

MCL 37.2202(1)(a)................................................................................1, 18

MCL 37.2701(a)........................................................................................18

MCL 418.301(11) .....................................................................................24

Michigan Persons With Disabilities Civil Rights Act, MCL 37.1101 .......1

Workers' Disability Compensation Act, MCL 418.101 ..................... viii, 1

## ISSUES PRESENTED

1.     Does collateral estoppel bar Plaintiff's PWDCRA, ELCRA, and WDCA claims where the reason for Plaintiff's discharge was actually litigated in a hearing before an Administrative Law Judge at which Plaintiff had a full and fair opportunity to litigate the issue of her discharge, and the Administrative Law Judge issued a final and valid decision with respect to the reason for Plaintiff's discharge?

    Plaintiff Answers: No.

    Defendant Answers: Yes.

2.     Is Defendant entitled to summary judgment as to Plaintiff's ADA and PWDCRA disability discrimination and failure to accommodate claims where Defendant granted Plaintiff's requested accommodation, Defendant discharged Plaintiff for legitimate, non-discriminatory reasons, and Plaintiff cannot show a genuine issue of fact as to whether these reasons were pretext for disability discrimination?

    Plaintiff Answers: No.

    Defendant Answers: Yes.

3.     Is Defendant entitled to summary judgment as to Plaintiff's ADA retaliation claim where Plaintiff failed to exhaust her administrative remedies, Plaintiff

cannot show her termination was causally connected to her request for and receipt of a reasonable accommodation, Defendant discharged Plaintiff for legitimate, non-retaliatory reasons, and Plaintiff has no evidence that Defendant retaliated against her for exercising her rights under the ADA?

Plaintiff Answers: No.

Defendant Answers: Yes.

4.    Is Defendant entitled to summary judgment as to Plaintiff's Title VII and ELCRA race discrimination claims where Plaintiff cannot identify a similarly-situated Caucasian individual treated more favorably than she, Defendant discharged Plaintiff for legitimate, non-discriminatory reasons, and Plaintiff has no evidence that her race played any role in her discharge or the terms and conditions of her employment?

Plaintiff Answers: No.

Defendant Answers: Yes.

5.    Is Defendant entitled to summary judgment as to Plaintiff's Title VII and ELCRA retaliation claims where Plaintiff cannot show a genuine dispute of material fact that her purported protected activity was causally connected to her discharge, Defendant discharged Plaintiff for legitimate, non-retaliatory reasons, and Plaintiff cannot show that those reasons were a pretext for unlawful retaliation?

Plaintiff Answers: No.

Defendant Answers: Yes.

6.   Is Defendant entitled to summary judgment as to Plaintiff's WDCA retaliation claim where Plaintiff never sought workers' compensation benefits, Defendant discharged Plaintiff for legitimate, non-retaliatory reasons, and Plaintiff has no evidence that her allege work-related injury had anything to do with her discharge?

Plaintiff Answers: No.

Defendant Answers: Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

- Elliott Larsen Civil Rights Act, MCL 37.2101 *et seq.*

- Person's With Disabilities Civil Rights Act, MCL 37.1101 *et seq.*

- Workers' Disability Compensation Act, MCL 418.101 *et seq.*

- Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

- Fed. R. Civ. P. 56

- *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)

## II.   __INTRODUCTION__

Plaintiff Vanessa Peake ("Plaintiff") claims that Defendant Marada Industries, Inc., d/b/a Cosma Body Assembly Michigan ("Defendant" or "Cosma Body"), her former employer, discriminated against her and failed to reasonably accommodate her disability in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Michigan Persons With Disabilities Civil Rights Act, MCL 37.1101 *et seq.* ("PWDCRA"). Plaintiff also claims retaliation under the ADA. Additionally, Plaintiff alleges Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Elliott Larson Civil Rights Act, MCL 37.2101 *et seq.* ("ELCRA") race discrimination and retaliation, and retaliation in violation of the Workers' Disability Compensation Act, MCL 418.101 *et seq.* ("WDCA"). None of Plaintiff's claims have merit.

Plaintiff was never denied a reasonable accommodation, and she has no direct evidence of discrimination or retaliation. Further, Plaintiff cannot identify a Caucasian or non-disabled individual treated more favorably than she. On the contrary, two Caucasian, non-disabled employees were similarly discharged for poor performance. As to her retaliation claims, Plaintiff cannot show a genuine dispute of material fact as to whether any purported protected activity was causally connected to her discharge.

Moreover, Defendant had a legitimate non-discriminatory, non-retaliatory

reason for terminating Plaintiff: her inability to adequately and effectively perform her job. Plaintiff has no evidence that this reason was pretext for unlawful discrimination or retaliation. Because all of Plaintiff's claims fail as a matter of law, Defendant respectfully requests that the Court grant its Motion.

### III.   <u>STATEMENT OF FACTS</u>

Cosma Body welds and assembles underbody automotive components. (**Ex. 1**, Myers Dep. Tr. 7.) It hired Plaintiff as the Health, Safety, Ergonomics and Environmental Coordinator effective April 11, 2016. (**Ex. 2**, Pl. Dep. Tr. 30.) Plaintiff's duties included creating and implementing safety and health procedures, managing Health, Safety and Environmental Compliance, participating in audits and follow-up with corrective actions, coordinating training of employees, resolving health safety and environmental issues, investigating accidents and injuries, overseeing the administration of the Workers Compensation Program and coordinating the selection of personal protective equipment. (*Id.* 28–29, 52; **Ex. 3**, Stolpe Dep. Tr. 11–12.) In this role, Plaintiff was the highest ranking health, safety, and environmental employee at the facility. (Stolpe Dep. 29.)

When hired Plaintiff reported to Shelley Thompson (Caucasian), HR Manager, and Mike Zimmerman (Caucasian),[1] General Manager. (Pl. Dep. 31, 40.) Thompson counseled Plaintiff regarding her performance, including Plaintiff's

---

[1] Zimmerman was terminated for performance issues in 2017.

email etiquette and communication style on numerous occasions. (*Id.* 54–55, 58–59, 64.) Plaintiff responded defensively to this constructive criticism, and dismissed Thompson's concerns. (*Id.*)

Brad Myers was hired as the Assistant General Manager at the New Hudson facility on July 31, 2017. When hired he found the facility not where it needed to be safety-wise. (Myers Dep. 14.) [2] There were "obviously issues with the facility with injuries." (Myers Dep. 14.) Most programs were "non-existent" or very hard to access. (*Id.*) Myers informed Plaintiff they needed to hit safety a bit harder. (Pl. Dep. 72; see also Myers Dep. 11; **Ex. 4**, 10/16/17 Email from B. Myers to V. Peake.) Myers wanted to review how certain safety issues were handled or addressed and asked Plaintiff to set up a meeting for October 19, 2017. (Pl. Dep. 73–75; Ex. 4.) Plaintiff scheduled a meeting but inexplicably missed it, claiming she got the room number or the meeting time wrong. (Pl. Dep. 73–75, 83–84; Myers Dep. 24–25.) Rather than search the other three conference rooms, which are all located within mere steps of each other or investigate further, she simply went back to her desk immediately. (*Id.*) Plaintiff later apologized for missing the meeting, but blamed others for not coming to find her. (Pl. Dep. 83–84.) Similarly, on October 27, 2017, Plaintiff walked out of a critical HR Team meeting stating she would be right back,

---

[2] Myers later became General Manager on October 24, 2017 when Zimmerman was terminated for performance issues. (*Id.* 7.)

only to never return. (*Id.* 91; **Ex. 5**, 10/27/17 Email from S. Thompson to V. Peake.)

Myers emphasized to Plaintiff that the facility's safety activities and programs were not effective and that it was imperative to eliminate accidents for the remainder of the year. (**Ex. 6**, 10/21/17 Email from B. Myers to V. Peake.) To that end, Myers tasked Plaintiff with providing an injury report during daily staff morning meetings as part of her responsibilities. (Pl. Dep. 82; Myers Dep. 19; Ex. 6.) "[T]he expectation was that she kicked off the meeting with any safety issues within the twenty-four hours, whether there were good acts or bad acts." (Myers Dep. 19.)

Plaintiff failed to meet this expectation. For example, at one meeting immediately following an accident that happened overnight, Plaintiff "right away handed the microphone off to someone else, because she couldn't speak to it." (*Id.* 20; *see also* Pl. Dep. 86; **Ex. 7**, 10/27/17 Email from S. Thompson to V. Peake.) Plaintiff also failed to properly track which employees needed lock-out/tag-out[3] training and failed to train employees in a timely manner. (Pl. Dep. 97–98; **Ex. 8**, 11/2/17 Email from S. Thompson to V. Peake.) There was "a lot of confusion, and something that should have took three meetings took three months because there was always confusion and disorganization in the process." (Wright Dep. 10–11.)

Eventually, Defendant brought in Ted Stolpe, Safety, Health, and

---

[3] Lock-out/tag-out refers to the processes and procedures of how to safely shut down a machine for maintenance, repairs, or cleaning. (**Ex. 9**, Wright Dep. Tr. 10–11.)

Environmental Manager at Eagle Bend Manufacturing (another Cosma Body division), to assist Plaintiff.[4] (Pl. Dep. 108–109; Stolpe Dep. 6.) Stolpe had frequent contact with Plaintiff starting in the spring of 2017. (Stolpe Dep. 7–8.) Plaintiff repeatedly requested the same thing over a three or four month period. (*Id.* 15.) The health and safety system was in early development and inadequate.

In October 2017, Charman Meador, Director of HR, asked Stolpe to visit the New Hudson facility to help the division understand the scope and depth of the mandatory Magna Health and Safety audit the facility would undergo in the future.[5] (*Id.* 8–9, 16–17, 21; **Ex. 10**.) Stolpe sat down over a three-day period with Plaintiff and went over every single line item to assess the facility's current level of preparedness for a future audit. (*Id.* 20, 24–25.) Stolpe developed the opinion that Plaintiff was not the right individual to make decisions with regard to the health and safety systems. (*Id.* 27.) At the conclusion of his visit, Meador asked Stolpe if he would hire Plaintiff, and he responded "no". (*Id.* 31.)

Myers made the decision to terminate Plaintiff's employment in consultation with Meador. (Myers Dep. 15, 31.) Myers described the final incident in which a

---

[4] Stolpe is now Cosma Body's Safety, Health, and Environmental Manager for the Americas. (Stolpe Dep. 6.) He works with Cosma Body divisions across Canada and the United States to help improve their safety, health, and environmental systems. (*Id.*)

[5] The audit is an objective process where points are assessed if policies are in place. (Stolpe Dep. 34, 36.) 80% is passing; the score at the Cosma Body was 30%. (*Id.* 35.)

serious injury had occurred. Rather than handle it herself, Plaintiff called the supervisor, and did not even try to attempt to go back and address the situation; the supervisor concluded there was no sense of urgency and that Plaintiff had no knowledge where the materials were to clean up the actual blood in the room. (*Id.* 15–16.) Myers testified that he had managers that would not go to Plaintiff because she did not have the answers, and that she did not know what to do. (*Id.*)

Shortly after Myers terminated Plaintiff for performance issues, he terminated Thompson, the Caucasian HR Manager, for performance issues. (**Ex. 11**, Thompson Dep. Tr. 11.) Subsequently, Myers hired Kimberly Murry, an African-American woman, to fill Thompson's position.

Plaintiff was on a medical leave of absence from August 22, 2017 to September 26, 2017 after her psychiatrist diagnosed her with post-traumatic stress disorder arising from and relating to a serious injury suffered by a contractor as a result of a forklift accident. (*Id.* 124–125; **Ex. 12**.) Plaintiff filed a request for short-term disability. (*Id.* 126–127.) Defendant's insurance company denied the request because the injury was work related. (*Id.* 128; **Ex. 13**.) Plaintiff never filed a claim for Worker's Compensation, even though she had extensive experience at previous employers in administering Workers' Compensation. (*Id.* 128, 193; Thompson Dep. 22–23.) Upon returning from leave, Plaintiff submitted a written request for a reasonable accommodation to take breaks as needed based on her mental and

emotional state. (Ex. 12; Thompson Dep. 23.) Defendant granted this request; although, as a salaried employee Plaintiff could already take a break whenever she wanted. (Thompson Dep. 23.) There is no evidence that Plaintiff was unable to take a break when needed. (Pl. Dep. 131.)

Prior to filing her Complaint in this matter, Plaintiff filed a claim with MIOSHA alleging that she was terminated for engaging in MIOSHA-protected activity. (Pl. Dep. 164–165.) The matter went to hearing after the MIOSHA Investigator "did a very thorough investigation and wrote a comprehensive report which turned up no evidence of a causal connection." The ALJ similarly found no evidence of causal connection. (*Id.* 166–167.) The ALJ found that Myers' testimony that he terminated her for poor job performance was credible and supported by documentary evidence.

## IV.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a. "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017 To that end, the nonmoving party may not rely on mere allegations in her pleadings, but must support her allegations by "citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A).

The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). A mere scintilla of evidence "is insufficient to defeat summary judgment." *Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d 811, 819 (E.D. Mich. 2011)

## V.   LEGAL ARGUMENT

### A. Collateral Estoppel Bars Plaintiff's PWDCRA, ELCRA, and WDCA Claims.

"When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (2d) of Judgments § 27 (1982). In Michigan,[6] there are five elements of collateral estoppel:

> (1) the parties in both proceedings are the same or in privity, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated in the first proceeding, (4) that issue was necessary to the judgment, and (5) the party against whom preclusion is asserted, or its privy, had a full and fair opportunity to litigate the issue.

*Lewis v. City of Detroit*, No. 09-CV-14792, 2011 WL 2084067, at *2 (E.D. Mich. May 24, 2011).

Federal courts must give a state agency's fact-finding the same preclusive

---

[6] Federal courts apply the collateral estoppel law of the state in which the federal court sits where the prior action was in state court. *DeLuca v. Amica Mut. Ins. Co.*, 119 F. Supp. 3d 611, 620 (E.D. Mich. 2015).

effect it would receive in the state's courts when the state agency acts in a judicial capacity and resolves issues of fact properly before it that the parties had an adequate opportunity to litigate. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986). "[T]he general principles of collateral estoppel are to be applied only when the procedures are adjudicatory in nature, when a method of appeal is provided, and when it is clear that the Legislature intended to make the determination final in the absence of an appeal." *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 (1988). When determining whether an agency's procedures are adjudicatory in nature, Michigan courts "compare the agency's procedures to court procedures to determine whether they are similar." *William Beaumont Hosp. v. Wass*, 315 Mich. App. 392, 399 (2016). "Quasi-judicial proceedings include procedural characteristics common to courts, such as a right to a hearing, a right to be represented by counsel, the right to submit exhibits, and the authority to subpoena witnesses and require parties to produce documents." *Id.*

Here, the ALJ decision has preclusive effect. There was a formal MIOSHA hearing, at which Plaintiff testified, questioned witnesses, and presented exhibits. (Pl. Dep. 165.) Moreover, the elements of collateral estoppel are satisfied. Plaintiff and Defendant were both parties to Plaintiff's MIOSHA administrative charge and the hearing that followed. The ALJ issued a final decision in that proceeding. The same issue – the reason for Plaintiff's discharge – was actually litigated in the

hearing and necessary to the ALJ's decision. (Pl. Dep. 166–167.) Finally, Plaintiff had a full and fair opportunity to litigate the reason for her discharge during the administrative hearing. Therefore, collateral estoppel bars Plaintiff's PWDCRA, ELCRA, and WDCA claims. [7]

### B. Plaintiff's ADA Failure to Accommodate Claim Fails.

Under the ADA, employers must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee," unless the accommodation would "impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).[8] To succeed on her ADA failure to accommodate claim, Plaintiff must establish: (1) that she is disabled; (2) that she is

---

[7] The MIOSHA ALJ decision does not preclude Plaintiff's Title VII and ADA claims. *Elliott*, 478 U.S. at 795; *Hamilton v. Niagara Frontier Transp. Auth.*, No. 00-CV-300SR, 00-CV-863SR, 2007 WL 2241794, at *8 (W.D.N.Y. July 31, 2007) (holding that "[b]ecause the ADA incorporates the procedural requirements of Title VII, state administrative proceedings which are not reviewed by a state court would not have preclusive effect" on ADA claims).

[8] As discussed in Section IV.A. *supra*, collateral estoppel bars Plaintiff's PWDCRA claims. Even if these claims were not barred, which they are, they fail for the same reasons as Plaintiff's ADA claims. Like the ADA, under the PWDCRA "a person shall accommodate a person with a disability for purposes of employment . . . unless the person demonstrates that the accommodation would impose an undue hardship." MCL 37.1102. Like the ADA, the PWDCRA prohibits employers from "[d]ischarg[ing] or otherwise discriminat[ing] against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202. "The Sixth Circuit has held that the ADA and PWDCRA 'substantially mirror' each other." *Chavez v. Waterford Sch. Dist.*, 720 F. Supp. 2d 845, 854 (E.D. Mich. 2010). Resolving an ADA claim generally resolves a PWDCRA claim as well. *Id.*

"otherwise qualified for the position despite [her] disability" either (a) without accommodation, or (b) with an alleged essential job requirement eliminated, or (c) with a proposed reasonable accommodation; (3) that [her] employer knew or had reason to know of [her] disability; (4) that [s]he requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007).

Here, Plaintiff's failure to accommodate claim is fundamentally flawed because Defendant ***granted*** Plaintiff's requested reasonable accommodation. (Thompson Dep. 23.) According to Plaintiff's own testimony, Defendant granted her a medical leave of absence, pursuant to her doctor's recommendation, and Plaintiff took breaks when needed upon her return to work. (Pl. Dep. 131.) Plaintiff's vague, threadbare allegations that she felt dissuaded from taking breaks (*Id.* 135, 137–138, 140) does not create a genuine dispute of material fact. Plaintiff's subjective experience does not change the fact that Defendant granted her medical leave and accommodation requests and Plaintiff did in fact take a medical leave and rest breaks when needed. Plaintiff's failure to accommodate claim fails as a matter of law and, thus, the Court should grant Defendant's Motion.

### C. Plaintiff's ADA Disability Discrimination Claim Cannot Succeed.

Under the ADA, an employer shall not discriminate against a qualified individual with a disability on the basis of such disability with respect to the

individual's terms and conditions of employment. 42 U.S.C. § 12112(a).[9] In the absence of direct evidence of discrimination, Plaintiff must proceed under the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Notarnicola v. Johnson Controls Inc.*, No. 12-11331, 2014 WL 1304591, at *4 (E.D. Mich. Mar. 28, 2014) (absent direct evidence of disability discrimination, the *McDonnell Douglas* burden shifting approach is applicable under the ADA).

### 1. *Plaintiff Cannot Establish a* Prima Facie *Case of Disability Discrimination.*

To establish a *prima facie* case of disability discrimination, Plaintiff must establish that (1) she is disabled within the meaning of the ADA, "(2) [s]he is qualified, that is, with or without reasonable accommodation which [s]he must describe, [s]he is able to perform the essential functions of the job, and (3) the employer terminated [her] because of [her] disability." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998). "The final element may also be

---

[9] As discussed in Section IV.A., *supra*, collateral estoppel bars Plaintiff's PWDCRA claims. Even if these claims were not barred, which they are, they fail for the same reasons as Plaintiff's ADA claims. Like the ADA, the PWDCRA prohibits employers from "[d]ischarg[ing] or otherwise discriminat[ing] against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202. "The Sixth Circuit has held that the ADA and PWDCRA 'substantially mirror' each other." *Chavez*, 720 F. Supp. 2d at 854. Resolving an ADA claim generally resolves a PWDCRA claim as well. *Id.*

satisfied by showing that 'similarly situated non-protected employees were treated more favorably.'" *Spence v. Donahoe*, 515 F. App'x 561, 567–58 (6th Cir. 2013) (quoting *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007)).

Here, Plaintiff's *prima facie* case fails because she cannot identify a similarly-situated non-disabled individual who was treated better than she, and she has no other evidence of circumstances that would give rise to an inference of unlawful disability discrimination. On the contrary, Thompson and Zimmerman, two non-disabled employees, were similarly discharged for poor performance. (Thompson Dep. 11.)

### 2.  *Plaintiff Failed to Perform Her Job Adequately.*

Even if Plaintiff could establish a *prima facie* case of discrimination, which she cannot, Defendant discharged her for the legitimate, non-discriminatory reason that she failed to perform her job effectively. Plaintiff did not make an effort to implement necessary changes and safety improvements. (Myers Dep. 27.) "[S]he did not own the things that she needed to roll out to the plant." (*Id.* 28.) Myers valued Stolpe's visit and feedback: "He pretty much said we failed the assessment. And he was very concerned of Vanessa's capability to be able to lead safety in that division." (*Id.* 30.)

### 3.  *Plaintiff Cannot Show Pretext.*

In order to defeat summary judgment, Plaintiff must establish a genuine issue

of fact as to whether Defendant's legitimate, non-discriminatory reason was pretext for disability discrimination. Plaintiff may establish that Defendant's reasons were pretextual "by showing that the proffered reason[s] (1) has no basis in fact, (2) did not actually motivate [Defendant's] challenged conduct, or (3) [were] insufficient to warrant the challenged conduct." *Clay v. UPS, Inc.*, 501 F.3d 695, 704 (6th Cir. 2007). Summary judgment for a defendant is appropriate when a plaintiff's claim of pretext is "based solely on unsupported speculation." *Id.*

It is not enough for Plaintiff to "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether the discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Town v. Mich. Bell Tel. Co.*, 455 Mich. 688, 704 (1997). Any disagreement with the facts does not create a genuine issue of material fact on the issue of pretext "'as long as an employer has an honest belief in its proffered nondiscriminatory reason." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007). "The key inquiry in assessing whether an employer holds such an honest belief is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action." *Id.* at 598-99 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). "An employer has an honest belief in its rationale when it 'reasonably relied on the particularized facts that were before it at the time the decision was made.'" *Id.* at 599. "We do not require

14

that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith*, 155 F.3d at 807; *Haughton v. Orchard Automation*, 206 F. App'x 524, 532–533 (6th Cir. 2006)("Perhaps this investigation was less than 'optimal' and conceivably it fell short in some respects, leaving 'stones unturned.' However, Defendant's investigation need not be perfect.")(internal citation omitted).

Here, Plaintiff cannot show that Defendant's reason for terminating her employment was pretext for unlawful discrimination. Apart from her own conjectures, Plaintiff has no evidence that her disability had anything to do with her discharge.

### D. Plaintiff's ADA Retaliation Claim Cannot Succeed.

The ADA proscribes "discriminat[ion] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In the absence of direct evidence of retaliation, an ADA retaliation claim is evaluated under the *McDonnell Douglas* burden-shifting framework." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). First, Plaintiff must establish the elements of a *prima facie* case: (1) she engaged in activity protected under the ADA, (2) Defendant knew of that activity, (3) Defendant took an adverse employment action against her, and (4) there was a causal connection between the protected activity and the adverse

15

action. *Id.* "'[A]n intervening legitimate reason' to take an adverse employment action 'dispels an inference of retaliation based on temporal proximity.'" *McDonald v. UAW-GM Ctr. for Human Resources*, 738 F. App'x 848, 855 (6th Cir. 2018).

If Claimant can establish a *prima facie* case of retaliation, "the defendant has a burden of production to articulate a non-discriminatory reason for its action." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015). "If the defendant meets its burden, the plaintiff must prove the given reason is pretext for retaliation." *Id.*

Preliminarily, Plaintiff's ADA retaliation claim is barred because Plaintiff failed to exhaust her administrative remedies. *Jones v. Natural Essentials, Inc.*, 740 F. App'x 489, 492 (6th Cir. 2018). "A plaintiff seeking to bring employment discrimination claims under the ADA must first exhaust administrative remedies, and failure to properly exhaust is an appropriate basis for dismissal of an ADA action."). *Id.* "As a general rule, an ADA plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Deister v. AAA Auto Club of Mich.*, 91 F. Supp. 3d 905, 929–30 (E.D. Mich. 2015).

Here, there is no mention of ADA retaliation in Plaintiff's EEOC Charge of Discrimination. In her Charge, with respect alleged ADA violations, Plaintiff states only: "I was diagnosed with my disability while employed at Respondent. I requested a reasonable accommodation which Respondent ignored" and "I believe I

was discharged and denied a reasonable accommodation based on my disability, in violation of the Americans with Disabilities Act of 1990, as amended." (**Ex. 14**, EEOC Charge.) Accordingly, Defendant is entitled to summary judgment on Plaintiff's purported ADA retaliation claim.

Regardless, even if Plaintiff's purported ADA retaliation claim were properly before the Court, which it is not, such a claim would fail on the merits. Plaintiff has no evidence to suggest that her request for a reasonable accommodation and her medical leave had anything to do with her discharge. Defendant granted both her medical leave and her request to take breaks during the workday as needed. (Thompson Dep. 23.) Moreover, as discussed above, even if Plaintiff could establish a *prima facie* case, which she cannot, Defendant terminated her employment because she failed to adequately perform her job duties. Plaintiff has no evidence this reason was a pretext for unlawful disability retaliation. As such, Defendant is entitled to summary judgment as to Plaintiff's disability retaliation claim.

### E. Plaintiff's Title VII Race Discrimination Claim is Meritless.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race" or "limit[ing], segregat[ing], or classify[ing] his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect

his status as an employee, because of such individual's race." 42 U.S.C. § 2000e-2.[10]

Plaintiff may prove unlawful discrimination based on direct evidence, which is evidence that, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006). In the absence of direct evidence, Plaintiff can also attempt to prove unlawful discrimination by circumstantial evidence. In that case, Plaintiff must proceed "under the three-step [*McDonnell Douglas*] burden-shifting framework for analyzing claims of employment discrimination under Title VII." *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001); *see McDonnell Douglas*, 411 U.S. at 802-03.

Under this framework, Plaintiff must first present a *prima facie* case of discrimination: "(1) [s]he is a member of a protected class; (2) was qualified for the job; (3) [s]he suffered an adverse employment decision; and (4) was replaced by a

---

[10] As explained above, collateral estoppel bars Plaintiff's ELCRA claims. Regardless, Plaintiff's ELCRA claims would fail for the same reasons as Plaintiff's Title VII claims. Like Title VII, the ELCRA prohibits employers from "discharge[ing], or otherwise discriminat[ing] against an individual with respect to employment . . . because of [ ] race." MCL 37.2202(1)(a). Like Title VII, the ELCRA prohibits employers from retaliating "against a person because the person has opposed a violation [of the ELCRA], or because the person has made a charge, filed a complaint . . . under [the ELCRA]." MCL 37.2701(a). Courts "review claims of alleged race discrimination . . . brought under . . . the [ELCRA] under the same standards as claims of race discrimination brought under Title VII." *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018).

person outside the protected class or treated differently than similarly situated non-protected employees." *Newman*, 266 F.3d at 406. Establishing a *prima facie* case of discrimination "does not necessarily preclude summary judgment in [Defendant's] favor." *Hazle v. Ford Motor Co.*, 464 Mich. 456, 463–64 (2001). Rather, only "a presumption of discrimination arises," which "drops away" when Defendant articulates a legitimate, nondiscriminatory reason for its actions. *Id.* at 463–65. *See also Newman*, 266 F.3d at 405. Plaintiff must then present sufficient evidence such that a reasonable trier of fact could find Defendant's reasons were a pretext for discrimination. *Hazle*, 464 Mich. at 465–66. Plaintiff retains the ultimate burden of persuasion at all times. *Newman*, 266 F.3d at 405.

Here, Plaintiff cannot show any direct evidence of race discrimination, and so she must attempt to show a genuine issue of material fact by circumstantial evidence, which she cannot do. Plaintiff cannot make out a *prima facie* case because she cannot identify any similarly-situated individuals outside the protected class treated better than she. However, even if Plaintiff were able to present a *prima facie* case, Plaintiff fails to present any evidence to create a genuine issue of fact as to whether Defendant's legitimate, nondiscriminatory reasons for discharging her were pretext for race discrimination.

### 1. There is no direct evidence of race discrimination.

Direct evidence is that which, "if believed, requires the conclusion that

unlawful discrimination was at least a motivating factor in the employer's actions." *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018). Put differently, "[i]nferences are not permitted." *Id.* "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate" meet this threshold. *Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, at *3 (Table) (6th Cir. 2012).

Significantly, "personal beliefs, conjecture and speculation are insufficient to support an inference of [] discrimination." *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). Direct evidence "cannot be based on rumors, conclusory allegations, or subjective beliefs." *Hein v. All Am. Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000). It cannot be based on "vague, ambiguous, or isolated remarks." *Id.*

Here, none of the purported racist comments Plaintiff alleges constitutes direct evidence of discrimination. None of the alleged isolated remarks was aimed at or about Plaintiff. (Pl. Dep. 130–131 "too urban".) None of them occurred in the context of Plaintiff's performance or termination of employment. (*Id.* 149 "them people from Detroit," 184–185 comments regarding hairstyles.) None of the comments Plaintiff alleges rise to the level of direct evidence. As such, Plaintiff must attempt to show a genuine dispute of material fact as to her race discrimination claim via circumstantial evidence and the *McDonnell Douglas* framework.

       2. *Plaintiff cannot establish a* prima facie *case of race discrimination.*

20

To establish a circumstantial evidence *prima facie* case of race discrimination, the employee must demonstrate that she was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct. *Clay*, 501 F.3d at 703.

In order to establish a *prima facie* case of race discrimination, Plaintiff must show that "[s]he was 'similarly situated' 'in all of the relevant respects' to an employee of a different race who was treated better." *Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019). To be similarly-situated, the employee generally "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Here, Plaintiff cannot identify a similarly-situated Caucasian employee who Defendant treated more favorably than she. Quite the opposite – two Caucasian employees were terminated for performance issues at around the same time as Plaintiff, one of whom was subsequently replaced by an African-American individual. (Thompson Dep. 11.) Accordingly, Plaintiff's *prima facie* case fails.

### 3.  There is no evidence of pretext.

21

Moreover, even if Plaintiff could show a *prima facie* case of race discrimination, which she cannot, Defendant terminated Plaintiff's employment because she failed to perform her job duties adequately. Plaintiff has no evidence this reason was pretext for unlawful race discrimination. Plaintiff has no evidence that her race played any role in her discharge.

### F. Plaintiff's Title VII Retaliation Claim Fails.

Title VII proscribes "discriminat[ing] against any . . . employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case that Defendant retaliated against her, Plaintiff must show: "(1) [s]he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Khalaf v. Ford Motor Co.*, 973 F.3d 469 (6th Cir. 2020). "[P]laintiff must demonstrate that, but for the defendant's unlawful conduct, [the] alleged injury would not have occurred." *Id.*

Importantly, a plaintiff "must show that the defendant knew of [her] exercise of this protected activity." *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999)

(plaintiff failed to demonstrate prima face retaliation case where she was "unable to produce any evidence that the relevant decision-makers who moved her to the "B" shift . . . knew of her complaints . . . when they decided to transfer her"). "[C]ourts consider the knowledge and motive of those who were 'meaningfully involved' in or influenced the adverse action." *Howard v. William Beaumont Hosp.*, No. 12-11949, 2013 WL 6730054, at *6 (E.D. Mich. Dec. 19, 2013).

Plaintiff's *prima facie* retaliation case fails because she cannot show that her purported protected activity was causally connected to her discharge. Plaintiff called Defendant's hotline ***after*** her termination. (Thompson Dep. 25.) Plaintiff complained to executive assistant Alison Churchill, but Churchill never told Thompson about Plaintiff's concerns. (Thompson Dep. 26; **Ex. 15**, Churchill Dep. Tr. 7.) Myers – the primary decision-maker – only learned of Plaintiff's complaints regarding alleged race discrimination ***after*** Plaintiff's termination. (Myers Dep. 34.) Further, even if Plaintiff could establish a *prima facie* case, which she cannot, Plaintiff has no evidence that Defendant's reason for terminating her employment – her poor performance – was pretext for unlawful retaliation.

### G. Plaintiff Has No Viable WDCA Retaliation Claim.

Preliminarily, as set forth in Section IV.A., *supra*, the ALJ's decision precludes Plaintiff's WDCA claim. However, even if this claim were not barred, which it is, Plaintiff's purported WDCA retaliation claim would fail on the merits as

23

well. Under the WDCA, an employer "shall not discharge an employee or in any manner discriminate against an employee . . . because of the exercise by the employee . . . of a right afforded by this act." MCL 418.301(11). WDCA retaliation claims proceed under the *McDonnell Douglas* framework. *Cuddington v. United Health Servs., Inc.*, 298 Mich. App. 264, 276–77 (2012).

As such, the elements of a *prima facie* WDCA retaliation claim are: (1) the employee asserted a right protected by the WDCA; (2) the employer knew that the employee engaged in this protected conduct; (3) the employer took an employment action adverse to the employee; and (4) the adverse employment action and the employee's assertion or exercise of [the WDCA right] were causally connected. *Id.* at 275. To that end, the plaintiff must show that the worker's compensation claim was a "significant factor" in the employer's decision to take the adverse employment action. *MacDonald-Bass v. JE Johnson Contracting, Inc.*, 493 F. App'x 718, 727 (6th Cir. 2012).

Here, Plaintiff never engaged in protected activity under the WDCA. Despite being well versed in workers' compensation issues, Plaintiff never filed or attempted to file a workers' compensation claim. (Thompson Dep. 22–23.) Where, as here, Plaintiff knew precisely how to exercise her rights to workers' compensation and elected not to, seeking medical attention and filing for short-term disability cannot properly be considered protected activity under the WDCA. Moreover, even if

Plaintiff's request for short-term disability could somehow be considered filing for workers' compensation under these circumstances, which it should not, particularly in light of Plaintiff's expertise in this area, Plaintiff has no evidence her short-term disability application was causally connected to her discharge. Finally, even if Plaintiff could establish a *prima facie* case of retaliation, as discussed above, Defendant discharged Plaintiff because she failed to perform her job effectively. Plaintiff has no evidence that this reason was a pretext for Plaintiff's WDCA retaliation. Therefore, Plaintiff's WDCA retaliation claim fails as a matter of law, and Defendant is entitled to summary judgment in its favor.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests the Court grant its Motion for Summary Judgment in its entirety and enter judgment in its favor.

Dated: March 29, 2021                RESPECTFULLY SUBMITTED,
                                     DICKINSON WRIGHT PLLC
                                     By: */s/ Timothy H. Howlett*
                                        Timothy H. Howlett (P24030)
                                     500 Woodward Avenue, Suite 4000
                                     Detroit, MI  48226
                                     (313) 223-3500
                                     thowlett@dickinsonwright.com
                                     *Attorneys for Defendant*